**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

TERRENCE N.,

                                                            No. 1:17-CV-0139
                                                            (CFH)
                            Plaintiff,

            v.

COMM'R OF SOC. SEC.,

                            Defendant.

_____

**APPEARANCES:**                              **OF COUNSEL:**

Terrence N.
Plaintiff pro se

Social Security Administration          CATHARINE L. ZURBRUGG, ESQ.
Office of Regional General Counsel,     Special Assistant U.S. Attorney
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

            Currently before the Court, in this Social Security action filed by Terrence N. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant

to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's

motion for judgment on the pleadings.  (Dkt. Nos. 12 and 19.)[1]  For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1962, making him 50 years old at the alleged onset date and 52 years old at the date of the ALJ's decision.  Plaintiff reported completing high school and two years of college.  Plaintiff has past work as a farmer and carpenter/remodeler (classified as a house repairer by a vocational expert at the administrative hearing).  At the initial level, Plaintiff alleged disability due to injuries to the neck, back, and foot/ankle.

### B. Procedural History

Plaintiff applied for a period of disability and Disability Insurance Benefits on November 21, 2013, alleging disability beginning August 8, 2013.  Plaintiff's application was initially denied on January 3, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at an administrative hearing before ALJ John G. Farrell on July 7, 2015.  On August 28, 2015, the ALJ issued a written decision finding

---

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 4.

Plaintiff was not disabled under the Social Security Act.  (T. 8-31.)[2]  On December 6, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 13-27.)  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.  (T. 13.)  Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 8, 2013, the alleged onset date.  (Id.)  Third, the ALJ found that Plaintiff has severe impairments including neck and back strain with degenerative disc disease ("DDD") of the cervical and lumbar spine, a mild cervical compression fracture, and a right foot heel spur.  (T. 13-15.)  Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 15.)  Specifically, the ALJ considered Listings 1.00 (musculoskeletal disorders) and 12.00 (adult mental disorders).  (Id.)  Fifth, the ALJ found that Plaintiff has the  residual functional capacity ("RFC") to perform light work "except he would need a sit/stand option at will, occasional bilateral overhead reaching, and occasional twisting, bending, stooping, kneeling, crouching, and crawling."  (Id.)  Sixth, the ALJ found that

---

[2]        The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Plaintiff is unable to perform any past relevant work. (T. 25-26.) Seventh, and last, the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. (T. 26-27.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff (appearing pro se) makes six arguments in support of his motion for judgment on the pleadings. (Dkt. No. 12, at 1-16 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ failed to properly consider his impairments at Step Two. (Id. at 1-2.) More specifically, Plaintiff argues that the ALJ trivialized his injuries and did not properly consider the objective medical reports indicating various conditions (including mild to moderate tendinosis in the ankle, mild reactive marrow and adjacent soft tissue edema, mild peroneus brevia, enlarged peroneal tubercle, mild plantar fasciopathy, multi-level DDD and joint disease throughout the spine, degrees of lateral recess and foraminal stenosis, and hyperintensity at T2 indicative of an annular fissure (tear) associated with discogenic back pain). (Id.) Plaintiff also notes that he has (1) been diagnosed with cervicalgia, cervical spondylosis and cervical intervertebral disc degeneration; (2) been prescribed sedating medications on a regular basis; (3) provided subjective evidence of pain; (4) received consistent conservative treatment; and (5) had an allergic reaction to epidural steroid treatment which may have worsened his condition. (Id. at 2.)

Second, Plaintiff appears to argue that the ALJ erred in finding Plaintiff had only mild

4

limitations in his daily activities and that the ALJ's credibility finding is not supported. (Dkt. No. 12, at 2-4 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues that the limited daily activities in which he is able to engage (including going out daily, mowing his lawn with a riding mower, and watching television) do not indicate the severity of his limitations.  (Id.)  Plaintiff also argues that the ALJ misstated the size of his family farm, asserting that it is approximately 100 acres rather than the 7000 acres indicated by the ALJ.  (Id. at 10.)

Third, Plaintiff argues that the ALJ erred in finding that he did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (Dkt. No. 12, at 4-5 [Pl.'s Mem. of Law].)

Fourth, Plaintiff appears to argue that the ALJ failed to properly consider the opinion evidence of record.  (Dkt. No. 12, at 5, 8-9 [Pl.'s Mem. of Law].)  More specifically, Plaintiff argues that the ALJ failed to give sufficient weight to a report from nurse practitioner ("NP") Jane Nugent because, contrary to the ALJ's statement that not enough details were provided, the evidence provided was clear and objective based on x-ray findings.  (Id. at 5.)

Plaintiff also argues that the ALJ improperly cited reports from Russell Cecil, M.D., Ph.D., and Jian Shen, M.D., although the examinations underlying those reports were performed by physician's assistant ("PA") Karen Taft, and that all of the reports issued by PA Taft indicate Plaintiff is either 99 percent disabled or 75-99 percent disabled.  (Dkt. No. 12, at 6 [Pl.'s Mem. of Law].)  Plaintiff argues that PA Taft was actually the treatment provider (although the reports were signed electronically by either Dr. Shen or Dr. Cecil) but that the ALJ made no reference to the numerous reports by PA Taft.  (Id.)  Plaintiff argues that,

5

although the ALJ stated Drs. Cecil and Shen listed him as having a 75 percent disability, every report for over a year consistently indicated at least a marked disability of 75-99 percent, with some reports indicating a disability of 99 percent. (Id.) Plaintiff argues that these reports constitute objective evidence relating to the severity of his injuries with the findings being supported by physical tests (such as x-rays and MRIs) and personal examinations. (Id.) Plaintiff also indicates that he received several injections to his ankle and, although they did temporarily relieve some of his pain, he felt ill following the injections. (Id.)

Regarding the opinion from Dr. Shen, Plaintiff argues that Dr. Shen never personally examined him except for administering epidural steroid injections and conducting a follow-up appointment. (Dkt. No. 12, at 12-13 [Pl.'s Mem. of Law].) Plaintiff notes that Dr. Shen did not indicate whether Plaintiff may have had an allergic reaction to these injections, but opted not to do a second set of injections. (Id.) Plaintiff argues that it was this allergic reaction and Dr. Shen's treatment that caused his symptoms to worsen rather than Dr. Shen's testimony that Plaintiff may have exaggerated his symptoms. (Id. at 13, 16.) Plaintiff also argues that, although Dr. Shen stated Plaintiff may have exaggerated his symptoms, he still listed Plaintiff as 75-99 percent disabled, and that the ALJ found only part of Dr. Shen's testimony credible. (Id. at 13-14.)

Regarding the opinion from Gregory Shankman, M.D., Plaintiff argues that Dr. Shankman's independent medical examination ("IME") was not actually independent because it was paid for by the New York State insurance fund. (Dkt. No. 12, at 6 [Pl.'s Mem. of Law].) Plaintiff argues that Dr. Shankman was not a treating physician, did not recommend any kind

of treatment, and did not perform the tests indicated in the report, and consequently his opinions should be disregarded.  (Id. at 7, 16.)  Plaintiff notes that, on one examination, Dr. Shankman noted no change from the previous visit but inexplicably decreased the disability rating from 57 percent to 33 percent.  (Id. at 7.)

Plaintiff also argues that Dr. Shankman's last report neglects to classify Plaintiff's ankle injury and that Dr. Shankman was not deposed prior to the hearing despite a Worker's Compensation judge ordering him to be deposed.  (Dkt. No. 12, at 7 [Pl.'s Mem. of Law].)  Plaintiff notes that he was eventually sent for another IME to have his ankle injury classified because Dr. Shankman forgot to do so and that the second physician classified it as a 47 percent disability.  (Id.)

Plaintiff additionally argues that the ALJ improperly cited a report by physical therapist ("PT") Nancy McCormick, whom Plaintiff notes is not a physician.  (Dkt. No. 12, at 10 [Pl.'s Mem. of Law].)  Plaintiff argues that the ALJ failed to state the reason for PT McCormick's report and did not appreciate the fact that she was unable to complete the examination on the first attempt because of Plaintiff's pain level that day or her recommendation that he work in a supervisory capacity because she did not feel he could regularly do physical work.  (Id.)  Plaintiff argues that the purpose of PT McCormick's assessment was to determine if it was feasible for him to work at home because it had already been determined by ACCESS VR that he was not employable elsewhere.  (Id. at 10-11.)

Fifth, Plaintiff argues that the ALJ seemed to take most of his findings from the transcripts of the Worker's Compensation hearing and appears to argue that the record was

7

not properly developed by the Worker's Compensation Board, which in turn affected their finding and the ALJ's decision in this case.  (Dkt. No. 12, at 4-5, 7, 13 [Pl.'s Mem. of Law].)  Plaintiff notes that Dr. Shankman and treating physician Gavriel Radu, D.O., were supposed to be deposed, but that depositions were not taken and the Worker's Compensation judge instead proceeded without the depositions.  (Id. at 7-8.)  Plaintiff argues that not having the testimony of Dr. Radu hurt both his Worker's Compensation case and his Title II claim.  (Id. at 8.)  Plaintiff argues that, at the time of the Worker's Compensation hearing (which the ALJ appeared to have relied on), Plaintiff was not seeing Dr. Shen or Dr. Cecil, but rather was treating with Dr. Radu.  (Id. at 13-14.)  Plaintiff argues that he was denied the opportunity to have his own physician testify on his behalf, and that the ALJ erred in affording no weight to the report by Dr. Radu.  (Id. at 14-16.)

Sixth, Plaintiff appears to argue that the ALJ's Step Five finding based on testimony from the vocational expert ("VE") is not supported.  (Dkt. No. 12, at 15-16 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues that he has no skills working as a copy machine operator (a position identified by the VE) and that such a position would require standing for prolonged periods of time and would not be available in his area without a long drive or relocation.  (Id. at 15.)  Plaintiff also argues that he could not perform the job of a toll collector because he cannot stand for any period of time and would have to drive on a daily basis.  (Id.)

### 2. Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 19, at 5-18 [Def.'s Mem. of Law].)  First, Defendant argues that the

8

ALJ properly assessed Plaintiff's severe and non-severe impairments. (Id. at 6-9.) Specifically, Defendant argues that the ALJ considered all evidence related to the diagnoses cited by Plaintiff and was not required to find every diagnosis to be a severe impairment. (Id. at 6-7.) Defendant also argues that the ALJ properly determined that Plaintiff's depressive disorder and anxiety did not constitute severe impairments by finding Plaintiff had mild limitation in activities of daily living, no limitation in social functioning, no-to-mild limitation in concentration, persistence or pace, and no episodes of decompensation. (Id. at 7-9.) Defendant argues that the evidence cited by the ALJ constitutes more than substantial evidence in support of his findings that Plaintiff's mental impairments were non-severe. (Id. at 9.) Defendant additionally argues that any error at Step Two would be harmless because the ALJ continued past Step Two and considered the combined effects of all impairments on Plaintiff's ability to perform work-related functions. (Id.)

Second, Defendant argues that the ALJ properly considered whether Plaintiff met any of the Listings. (Dkt. No. 19, at 9-10 [Def.'s Mem. of Law].) Specifically, Defendant argues that Plaintiff briefly mentions the Listings, but does not point to any evidence that his impairments met or equaled the severity of any Listing and does not allege that he meets a specific Listing. (Id. at 9.) Defendant also notes that the ALJ considered Plaintiff's impairment under Listing 1.00 (musculoskeletal disorders) and therefore fulfilled his duty at this step. (Id. at 9-10.)

Third, Defendant argues that the ALJ properly determined Plaintiff's RFC and weighed the treating physician opinions. (Dkt. No. 19, at 10-16 [Def.'s Mem. of Law].) Specifically,

Defendant argues that the ALJ discussed in detail the substantial record evidence that supported the RFC determination. (Id. at 10.) Defendant argues that the ALJ noted Plaintiff's complaints of ongoing neck, lower back, and foot pain, but that the evidence of record did not corroborate his allegations of disabling limitations. (Id. at 10-11.) Defendant also argues that the ALJ thoroughly reviewed the relevant medical evidence supporting his determination that Plaintiff retained the ability to perform a reduced range of light work, including scans of Plaintiff's lumbar spine, cervical spine, and right foot as well as physical examination findings, treatment records, and the various opinions from Dr. Welch, Dr. Cecil, Dr. Shen, and PT McCormick. (Id. at 11-13.) Defendant argues that this evidence supports the ALJ's determination that Plaintiff was capable of a reduced range of light work. (Id. at 13.)

More specifically, Defendant argues that PT McCormick's functional capacity assessment (to which the ALJ afforded significant weight) in December 2014 provides substantial evidence to support the RFC finding. (Dkt. No. 19, at 13-14 [Def.'s Mem. of Law].) Defendant notes that the ALJ explained that, while PT McCormick was not an acceptable medical source, she personally examined Plaintiff and her opinion was consistent with clinical findings of other treating physicians. (Id. at 14.) Defendant argues that PT McCormick's opinion was also supported by her own clinical findings and that she was a physical therapist who was an expert in assessing her patients' physical capabilities. (Id.)

Defendant also argues that the ALJ properly afforded little weight to the disability ratings from Plaintiff's treating physicians because they were not consistent with the objective medical evidence and did not contain any details regarding the basis for the physicians'

assessments.  (Dkt. No. 19, at 14-15 [Def.'s Mem. of Law].)  Defendant argues that these opinions also did not include a function-by-function assessment of Plaintiff's capabilities and were confined to opining whether he could return to his previous heavy work, which exceeded what the ALJ determined Plaintiff could perform.  (Id. at 15.)  Defendant also argues that these opinions (rendered for Worker's Compensation purposes) are not based on Social Security disability regulations and therefore are not binding on the ALJ, and that a treating physician's opinion as to the ultimate issue of disability is, in any event, not entitled to any special significance.  (Id.)

Defendant additionally argues that any error in relying on Dr. Shankman's opinion is harmless because there is sufficient substantial evidence (even absent Dr. Shankman's opinion) to support the ALJ's finding, and thus any error in weighing Dr. Shankman's opinion would not have altered the ALJ's decision.  (Dkt. No. 19, at 16 [Def.'s Mem. of Law].)

Fourth, Defendant argues that substantial evidence supports the ALJ's Step Five analysis because the ALJ relied on the testimony of a VE who specifically stated that an individual of Plaintiff's age, educational background, and RFC could perform the jobs of cashier, photocopy machine operator, and toll collector.  (Dkt. No. 19, at 16-18 [Def.'s Mem. of Law].)  In response to Plaintiff's arguments regarding the jobs identified by the ALJ, Defendant notes that photocopy machine operator is an unskilled position with a specific vocational preparation ("SVP") of 2 and argues that Plaintiff's lack of experience with the photocopy job would therefore not preclude him from performing it.  (Id. at 16-17.)  Defendant also argues that the ALJ cited substantial evidence in support of the RFC assessment to

indicate that Plaintiff's complaint regarding the standing requirements for these positions is without merit.  (Id. at 17.)

Regarding Plaintiff's argument that there are no copy machine operator or toll collector jobs near his home, Defendant argues that it does not matter whether work exists in the immediate area in which a claimant lives, nor does it matter whether a specific job vacancy exists for a claimant or whether he would be hired if he applied for the job. (Dkt. No. 19, at 17 [Def.'s Mem. of Law].) Defendant emphasizes that the relevant inquiry is whether work exists in the national economy that Plaintiff could perform and notes that the VE testified that these jobs exist in significant numbers in the national economy. (Id.) Defendant argues that the ALJ reasonably relied on the VE's testimony and that it constituted substantial evidence to support his Step Five finding.  (Id.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made

according to the correct legal principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983), Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

13

whether an individual is disabled as defined by the Social Security Act.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982); <u>accord</u> <u>McIntyre v. Colvin</u>, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  <u>Barnhart v. Thompson</u>, 540 U.S. 20, 24 (2003).

14

## III. ANALYSIS

### A. Whether Substantial Evidence Supports the ALJ's Analysis of Plaintiff's Severe and Non-Severe Impairments

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities.  See 20 C.F.R. § 404.1520(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. See Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Gibbs v. Astrue, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out de minimis claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." Taylor, 32 F. Supp. 3d at 265 (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity. See id. (citing Miller v. Comm'r of Soc. Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found

non-severe.  See Fuimo v. Colvin, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, No. 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), Report and Recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Here, the ALJ found that Plaintiff's neck and back strain with DDD of the cervical lumbar spine, mild cervical compression fracture, and right foot heel spur are severe impairments.  (T. 13.)  The ALJ also found that Plaintiff's medically determinable mental impairments of depressive disorder not otherwise specified and anxiety state unspecified, considered singly and in combination, do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and are therefore non-severe.  (T. 14.)  In making this finding, the ALJ found that Plaintiff has mild limitation in activities of daily living, no limitation in social functioning, no-to-mild limitation in concentration, persistence or pace, and has experienced no episodes of decompensation of extended duration.  (T. 14-15.)

While Plaintiff argues that the ALJ seemed to minimize his injuries, it is not clear to the Court that the ALJ did so, nor is it clear that the ALJ committed any error at Step Two when considering Plaintiff's various physical and mental impairments.  The ALJ found several physical impairments to be severe and continued with the sequential evaluation, ultimately

limiting Plaintiff to a restricted range of light work and finding he could perform other jobs existing in significant numbers in the national economy. (T. 13-27.) As for Plaintiff's argument regarding the ALJ's finding that he has only mild limitation in performing activities of daily living, the Court can identify no error in the ALJ's analysis of Plaintiff's medically determinable mental impairments. (T. 14.) The ALJ noted that Plaintiff testified at the hearing that he had developed intermittent depression secondary to his conditions and that he was prescribed medication for a few months, which did not help. (Id.) The ALJ also noted that Plaintiff did not attend any counseling sessions and he indicated that he was able to handle his mental health conditions on his own. (Id.) Upon review, Plaintiff's testimony at the hearing is accurately reflected in the ALJ's summary. (T. 47-48.) The record includes a February 2015 treatment note indicating Plaintiff was referred to St. Mary's Healthcare Mental Health for counseling, but Plaintiff testified at the administrative hearing in July 2015 that he had not gotten any therapy or counseling for depression or anxiety. (T. 48, 405-07.)

Further, the Court finds that any error by the ALJ in failing to find the other impairments alleged by Plaintiff severe would be harmless because he found at least one impairment to be severe, continued with the sequential evaluation, and provided explanation in his decision showing he properly considered the evidence related to all of Plaintiff's impairments. Fuimo, 948 F. Supp. 2d at 269-70; Reices-Colon, 523 F. App'x at 798.

For the above reasons, the ALJ's severity findings regarding Plaintiff's impairments are supported by substantial evidence. Remand is therefore not required on this basis.

**B. Whether Substantial Evidence Supports the ALJ's Analysis of the Listings**

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." Rockwood, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. Id. at 273 (citing Berry, 675 F.2d at 468).

Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (T. 15.) The ALJ noted that he carefully considered all the pertinent listings, including Listing 1.00 (musculoskeletal disorders), which requires specific findings that were not present in Plaintiff's case. (Id.)

As Defendant argues, Plaintiff does not point to any evidence that his impairments meet or equal the severity of any Listing and does not allege that he meets a specific Listing. (Dkt. No. 19, at 9-10 [Def.'s Mem. of Law]; (Dkt. No. 12, at 4-5 [Pl.'s Mem. of Law].) Substantial evidence supports the ALJ's finding. The Court therefore finds no error in the ALJ's finding that Plaintiff did not meeting a Listing.

## C. Whether Substantial Evidence Supports the ALJ's Analysis
## of the Opinion Evidence and Plaintiff's RFC

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." Blinkovitch v. Comm'r of Soc. Sec., No. 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source

19

examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. See 20 C.F.R. §§ 404.1527(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, No. 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8), Report and Recommendation adopted by 2013 WL 1180864 (Mar. 20, 2013).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the

evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

The ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings.  See Booker v. Astrue, No. 07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing Ferraris, 728 F.2d at 587); Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002)).

### 1. The Opinions and Medical Evidence of Record

When making his RFC determination, the ALJ summarized the evidence and weighed the various opinions of record, noting the results of multiple x-ray and CT scans as well as various disability ratings from numerous providers relating to Plaintiff's Worker's Compensation claim. (T. 15-25.) Within his analysis, the ALJ noted that, in September 2013, Dr. Welch opined that Plaintiff was 100 percent disabled until seen by a neurosurgeon; the ALJ afforded little weight to this opinion because Dr. Welch did not provide any details regarding the basis of his opinion or regarding the duration of such limitations.  (T. 17-18,

21

298.)  The ALJ also noted the September 2013 findings of treating neurosurgeon Dr. Cecil and his opinion that Plaintiff had a marked partial disability for one week based completely on his subjective complaints of pain; the ALJ also noted the findings upon subsequent follow-up visits with Dr. Cecil and treating orthopedist Dr. Shen, including a 75 percent disability rating by Dr. Cecil.  (T. 18-19, 222-94.)

The ALJ summarized the February 2014 examination findings and opinion by orthopedist Dr. Shankman (indicating that Plaintiff had a moderate-marked partial disability of 57 percent, could work at a sedentary level with an ability to lift, carry, push and pull 15 pounds or less, was unable to perform overhead work, climb heights, perform rapid or repetitive motions with his neck, back and right ankle, could walk and ambulate to tolerance, and would need to sit and/or stand at his own volition).  (T. 19, 251-56.)   The ALJ noted Plaintiff's treatment with pain management specialist Jason H. Steindler, D.O., and chiropractor Nancy A. Radigan, D.C.  (T. 20.)  The ALJ also noted Plaintiff's follow-up treatment with Drs. Cecil and Shen including Dr. Shen's May 2014 opinion that Plaintiff had a continued 75-99 percent impairment.  (T. 20, 236-94.)  The ALJ summarized Plaintiff's October 2014 treatment with pain management specialist Paul Soccio, M.D., (who opined that Plaintiff had a temporary impairment of 54 percent) and November 2014 treatment with Paul W. Salerno, M.D., (who indicated Plaintiff was not a surgical candidate, recommended conservative treatment, and opined that Plaintiff had a 75 percent impairment); the ALJ afforded little weight to the opinions of Drs. Soccio and Salerno because there were no details regarding the basis of their opinions or regarding the duration of the opined limitations.  (T.

22

21, 310-23.)

The ALJ also summarized the December 2014 physical capabilities functional assessment from PT McCormick, who concluded that Plaintiff was "currently able to work in a light to medium work ability and should avoid activities requiring him to look up, reach overhead, with limited bending and allowed changes in position during the workday." (T. 22, 384-93.) The ALJ afforded this opinion significant weight, noting that although PT McCormick is not an acceptable medical source pursuant to the Social Security Regulations, she personally examined Plaintiff and that her assessment was consistent with those of treating physicians. (T. 22.) The ALJ also noted more recent chiropractic treatment with Ms. Radigan as well as treatment records from treating physician Erica Wachtmeister, M.D. (T. 22, 324-36, 398-407.)

The ALJ summarized the May 2015 reevaluation by Dr. Shankman, who opined that Plaintiff had a 33 percent mild to moderate partial disability, could work at a light to moderate level with an ability to lift, carry, push and pull 30 pounds or less, and could not perform excessive overhead work with the neck and back, could perform no rapid or repetitive motions with the neck, back or right ankle, and would need to sit and stand at his own volition. (T. 23, 343-49.) The ALJ afforded significant weight to this more recent opinion from Dr. Shankman because he personally examined Plaintiff on more than one occasion and his findings were consistent with other medical evidence of record. (T. 23.)

The ALJ summarized various treatment visits and numerous MRI scans of the lumbar spine, cervical spine, and ankle/foot. (T. 350-64, 394-97.) The ALJ noted that, in February

and April 2015, Dr. Shen reported that Plaintiff responded quite dramatically to very little pressure on examination, and concluded this reaction was consistent with some symptom magnification, given that he had full range of motion in the bilateral lower extremities with good strength, no neurovascular deficits, and negative straight leg raise; the ALJ also noted that Dr. Shen opined that Plaintiff remained at a temporary impairment level of 75-99 percent, advised Plaintiff that there was not much more he could offer from an orthopedic perspective, and encouraged him to continue with physical therapy and using a TENS unit. (T. 24, 360-64.)

The ALJ summarized treatment records from pain management specialist Dr. Radu. (T. 24, 365-79, 408-14.) The ALJ also summarized Dr. Shen's July 6, 2015, treatment note diagnosing Plaintiff with ankle, neck and lumbar sprains and strains and intervertebral disc degeneration of the cervical and lumbar spine, and Dr. Shen's opinion that Plaintiff had reached maximum medical improvement and that his disability rating for both the lumbosacral spine and cervical spine was "table 11.1, severity 3B."[3] (T. 25, 422-25.) The ALJ afforded significant weight to Dr. Shen's opinion, as he opined that Plaintiff was demonstrating possible symptom magnification consistent with other medical evidence of record, but indicated that Dr. Shen's opinion that Plaintiff remained at a 75-99 percent temporary impairment was afforded little weight, as this was nonspecific in nature and was not consistent with diagnostic or objective physical findings. (T. 25.)

---

[3]     The ALJ noted Dr. Shen's classification as "table 11.2, severity 3B." (T. 25.)

### 2. The Court's Analysis

Plaintiff makes several arguments pertaining to the ALJ's consideration of the reports/opinions of Dr. Welch, Dr. Cecil, Dr. Shen, Dr. Shankman, and Dr. Radu, and PT McCormick's assessment. (Dkt. No. 12, at 5, 7, 10-14, 16 [Pl.'s Mem. of Law].) The Court does not find these arguments persuasive for the following reasons.

First, the ALJ adequately summarized the evidence of record, including the various opinions, treatment notes, and Worker's Compensation disability ratings. (T. 15-25.) Further, the ALJ provided sufficient reasons for the weight afforded to multiple opinions from Drs. Welch, Soccio, Salerno, Shankman, and Shen and PT McCormick. (T. 17-18, 21-23, 25.) The ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015). "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'" Camarata v. Colvin, No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)). It is clear from the ALJ's overall decision that he appropriately considered the evidence before him, including the numerous opinions of record.

Second, Plaintiff objects to the attribution of some of the reports/opinions to physicians who did not regularly examine him rather than the physician's assistant or nurse practitioner who did. (Dkt. No. 12, at 5, [Pl.'s Mem. of Law].) The Court notes that although Plaintiff

indicates he was never seen by Dr. Welch, Dr. Welch was the one indicated as the provider in the September 2013 progress report that the ALJ considered. (T. 298.) Plaintiff also alleges that the examinations correlating to reports form Drs. Cecil and Shen were actually performed by PA Taft and consistently indicated either a 99 percent or 75-99 percent disability rating. (Dkt. No. 12, at 6 [Pl.'s Mem. of Law].) The Court notes that most, if not all, the reports referenced by Plaintiff indicate that, regardless of who performed these examinations, supervising physicians Dr. Cecil or Dr. Shen did oversee Plaintiff's orthopedic care. (T. 228-43, 259-60, 266-73, 283, 289-90, 351-64.) The opinions that Plaintiff claims were not from physicians were in fact signed by physicians and therefore the ALJ did not err in attributing those opinions to those physicians.

Third, Plaintiff argues that Dr. Shen had only personally examined him on two occasions and neglected to note an allergic reaction that Plaintiff alleges exacerbated his symptoms. (Dkt. No. 12, at 12-14, 16 [Pl.'s Mem. of Law].) Plaintiff also argues that although Dr. Shen stated Plaintiff may have exaggerated his symptoms, he still listed Plaintiff as 75-99 percent disabled, but the ALJ found only part of Dr. Shen's testimony credible. (Id. at 13-14.) Again, it is the ALJ's responsibility, not this reviewing Court's, to weigh the evidence of record and resolve inconsistencies therein. Bliss, 2015 WL 457643, at *7; Camarata, 2015 WL 4598811, at *9. Further, the ALJ provided sufficient explanation for the weight he afforded to Dr. Shen's opinion, noting that Plaintiff's demonstration of possible symptom magnification was consistent with other medical evidence of record whereas Dr. Shen's opinion that Plaintiff remained at a 75-99 percent temporary impairment was nonspecific in nature and not

consistent with diagnostic or objective physical findings. (T. 25.)

Fourth, the ALJ did not err in declining to rely on the Worker's Compensation decisions because Worker's Compensation disability decisions are based on a different standard than Social Security disability and disability ratings included in medical opinions provided in the context of such decisions assess whether a claimant can return to their previous work, not whether they can do any work as required under the social security analysis. See Allen v. Comm'r of Soc. Sec., No. 13-CV-1518, 2014 WL 5288999, at *5 (N.D.N.Y. Oct. 15, 2014) (citing Gray v. Chater, 903 F. Supp. 293, 301 n. 8 (N.D.N.Y. 1995); quoting Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y. 1994)) ("[D]isability determinations for Worker's Compensation are made pursuant to a different standard, focusing on the ability to do prior work as opposed to any substantial gainful activity . . . 'the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits . . . [a]ccordingly, an opinion rendered for purposes of [Worker's Compensation] is not binding on the Secretary.'").

Fifth, regarding Dr. Shankman's opinion, Plaintiff argues that (a) the IME was not actually independent, (b) Dr. Shankman was not a treating physician, (c) Dr. Shankman did not perform the tests indicated in his report, (d) his examination noted no change but the disability rating inexplicably decreased from 57 to 33 percent, (e) his second report neglected to classify Plaintiff's injury, and (f) his opinion should be disregarded. (Dkt. No. 12, at 7, 16 [Pl.'s Mem. of Law].)  Plaintiff also notes that he was eventually sent to another IME to have his ankle injury classified because Dr. Shankman forgot to do so and that the second physician

classified it as a 47 percent disability rating. (Id. at 7.) However, the ALJ provided sufficient reasons for affording significant weight to Dr. Shankman's opinion, including that he personally examined Plaintiff on more than one occasion and that his findings were consistent with other medical evidence of record. (T. 23.) Again, it is within the ALJ's purview to weigh the evidence and resolve any conflicts therein when making his determination. Bliss, 2015 WL 457643, at *7; Camarata, 2015 WL 4598811, at *9. Further, the Court does not find Plaintiff's arguments persuasive because, although the ALJ afforded significant weight to Dr. Shankman's May 2015 reevaluation, it is not the only opinion on which the ALJ relied in determining the RFC. (T. 17-25.)

Sixth, Plaintiff argues that the ALJ erred in affording no weight to the report by Dr. Radu. (Dkt. No. 12, at 14 [Pl.'s Mem. of Law].) It is assumed that Plaintiff refers to the March 2015 treatment note from Dr. Radu indicating a 75 percent temporary impairment. (T. 367-72.) The ALJ summarized treatment records from Dr. Radu in his decision, but did not specifically note this disability rating or articulate the weight to which he afforded this rating. (T. 24, 365-79, 408-14.) However, failure to consider or weigh an opinion may be considered harmless error where consideration of that opinion would not have changed the outcome. Cottrell v. Colvin, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010)); Camarata, 2015 WL 4598811, at *16 (denying the request for remand because application of the correct legal standard would not change the outcome); Ryan v. Astrue, 650 F. Supp. 2d

207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose). In light of the numerous other Worker's Compensation disability ratings of record (some of which exceeded 75 percent) that the ALJ did explicitly reference and weigh, the Court finds any error by the ALJ to explicitly weigh this single rating to be harmless based on the reasons the ALJ provided for declining to rely on those similar ratings.[4]

Seventh, regarding PT McCormick's assessment, Plaintiff points out that (1) PT McCormick is not a physician, (2) the ALJ failed to consider the reason for PT McCormick's report, (3) the ALJ did not appreciate that PT McCormick was unable to complete the examination on the first attempt because of Plaintiff's pain level that day, and (4) the ALJ did not appreciate that PT McCormick recommended Plaintiff work in a supervisory capacity because she did not feel he could perform physical work regularly. (Dkt. No. 12, at 10-11 [Pl.'s Mem. of Law].) The Court does not find these arguments persuasive. (T. 17-25.) The ALJ noted that PT McCormick was not an acceptable medical source pursuant to the Regulations, but indicated that he considered her assessment along with the objective evidence in the

---

[4]    In Gemmell v. Comm'r of Soc. Sec., No. 16-CV-1014 (CFH), 2017 WL 3328237, at *5-8 (N.D.N.Y. Aug. 2, 2017), this Court distinguished Cottrell, 206 F. Supp. 3d at 810, Camarata, 2015 WL 4598811, at *16, and Ryan, 650 F. Supp. 2d at 217. In Gemmell, the Court noted that the ALJ provided no indication as to how a treating physician's opinion was interpreted and the decision did not at all mention the doctor's opinion on a relevant point nor provide "any suggestion of how she may have interpreted that opinion[.]" Gemmell, 2017 WL 3328237, at *7. This Court has reviewed the ruling in Gemmell and concludes that it is not analogous to this case and does not require a different result. The ALJ's decision here does summarize Dr. Radu's treatment records as well as the numerous other disability ratings in the record. (T. 24.) Thus, the ALJ's assessment and consideration of Dr. Radu's March 2015 rating can be determined from his opinion, despite the fact that he did not accord that rating a specific weight.

record. (T. 22.) He afforded her assessment significant weight, concluding that she personally examined Plaintiff and that her assessment was consistent with the opinions of other treating physicians, which supported the RFC. (Id.)

While the ALJ did not explicitly reference the purpose of PT McCormick's assessment (which Plaintiff argues was to determine if it was feasible for him to work at home because it had already been determined by ACCESS VR that he was not employable elsewhere), the ALJ did identify this evaluation as a "physical capabilities assessment." (T. 22.) PT McCormick noted Plaintiff reported that he hoped to start his own business and stated that Plaintiff was referred for evaluation "to determine his physical limitations/capabilities." (T. 386.) While the ALJ did not explicitly reference the purpose of the evaluation or PT McCormick's notation that Plaintiff would benefit from taking on a supervisory role as much as possible to limit his physical demands, neither the purpose of the evaluation nor PT McCormick's recommendation is clearly inconsistent with the ALJ's RFC determination. (T. 22, 393.)

Finally, the Court's review of the ALJ's overall decision indicates that he properly reviewed the evidence of record and provided sufficient explanation for his analysis. For the reasons above, the Court therefore finds that the ALJ's RFC determination (including his analysis of the opinion evidence) and overall finding that Plaintiff is not disabled are supported by substantial evidence. Remand is not required on these bases.

## D. Whether the ALJ Failed to Properly Develop the Record

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits. Burgess, 537 F.3d at 128 (quoting Melville, 198 F.3d 52; citing Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002), Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)). "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009)). An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports." Hart v. Comm'r, No. 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d)) (internal quotation marks omitted).

"Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). Further, there is no obligation to re-contact a treating physician where the evidence of record is "adequate to permit the ALJ to make a disability determination." Carvey v. Astrue, 380 F. App'x 50, 53 (2d Cir. 2010) (summary order) (citing Perez, 77 F.3d at 47-48; see also 20

C.F.R. §§ 404.1520b, 416.920b (indicating that the Commissioner may re-contact a treating physician "[i]f the evidence is consistent, but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled").

While it appears Plaintiff did not have an attorney at the time of his request for review by the Appeals Council in this action, the record indicates that he had an attorney, Rachael W. Phelan, at the time of the administrative hearing with the ALJ; Ms. Phelan submitted multiple exhibits to be added to Plaintiff's medical file for review. (T. 32-35, 295, 310, 313, 324, 337, 343, 350, 365, 380, 384, 394, 398, 408, 415, 422.) At the hearing in July 2015, Plaintiff was represented by Ms. Phelan, who had no objection to the admission of Exhibits 1A through 2A, 1B through 9B, 1D, through 6D, 1E through 15E, and 1F through 18F and indicated that she did not have any additional records she intended to submit into the record. (T. 35-36.) At the conclusion of the hearing, the ALJ asked Ms. Phelan if there were any other statements pending or requested and she answered in the negative. (T. 69.) The ALJ also asked Plaintiff if there was anything else he wanted the ALJ to know that was not covered in the questions during the hearing and Plaintiff stated "I don't believe so." (Id.) Neither Plaintiff nor his attorney mentioned any missing depositions of physicians or any deficits in the opinion evidence in the record at that point in time (which is apparently the same opinion evidence currently of record, as it does not appear that any other exhibits have been submitted since the ALJ's decision). (T. 32-70.)

In light of the lack of any indication from Plaintiff or his attorney that the record may not

32

be complete, the ALJ reasonably proceeded with analyzing Plaintiff's claim. Further, the ALJ's overall analysis of the evidence (including the records from both Dr. Shankman and Dr. Radu) indicates that he had sufficient evidence before him to make a decision on Plaintiff's claim. As discussed in Sections III.A., III.B., and III.C. of this Decision and Order, the ALJ properly considered the evidence of record (including the opinions and various medical reports and records) in making his decision on Plaintiff's claim.  Further, a failure by the Worker's Compensation Board to depose Drs. Shankman and Radu prior to making a determination does not indicate a failure by the ALJ to properly develop the record in relation to Plaintiff's Title II claim.

     For the reasons above, the Court finds that there was no error by the ALJ related to properly developing the record.  Remand is therefore not required on this basis.


### E. Whether Substantial Evidence Supports the ALJ's Credibility Determination

     In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Schlichting v. Astrue, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve

evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and

that, "[i]f there is substantial evidence in the record to support the Commissioner's findings,

'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of

pain.'" Schlichting, 11 F. Supp. 3d at 206 (quoting Carroll v. Sec'y of Health and Human

Servs., 705 F.2d 638, 642 (2d Cir. 1983); Aponte v. Sec'y, Dep't of Health and Human Servs.,

728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly

observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility

assessment is generally entitled to deference.  Weather v. Astrue, 32 F. Supp. 3d 363, 371

(N.D.N.Y. 2012) (citing Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and

limiting effects of his symptoms were only partially credible, as they are not substantiated by

any objective medical evidence. (T. 17.) In support of his RFC and credibility determinations,

the ALJ provided a thorough and detailed review of the evidence of record, including Plaintiff's

disability reports and testimony as well as the medical and opinion evidence.  (T. 16-25.)

Within that review, the ALJ provided several specific reasons for his credibility finding.  (Id.)

For example, the ALJ noted Plaintiff's report to PT McCormick that he had a Christmas tree

business and planned to increase his business including adding a greenhouse operation. (T.

22, 25, 386.)  The ALJ also noted that the record included evidence strongly suggesting

Plaintiff had exaggerated symptoms and/or limitations and engaged in symptom

magnification. (T. 24, 361, 395-97, 423-25.)  The ALJ indicated that, although Plaintiff had

received treatment for his allegedly disabling impairments, that treatment had been essentially

routine and/or conservative in nature, and the record also revealed that the treatment had been generally successful in controlling his symptoms. (T. 25.) Finally, the ALJ noted Plaintiff's daily activities, which the ALJ indicated were not limited to the extent one would expect given the complaints of disabling symptoms and limitations. (Id.) The reasons provided by the ALJ for his credibility determination are supported by substantial evidence and this Court will not reweigh the evidence of record. See Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll, 705 F.2d at 642).

For the reasons above, the Court finds that the ALJ's credibility determination is supported by substantial evidence. Remand is therefore not required on this basis.

### F. Whether Substantial Evidence Supports the ALJ's Step Five Finding

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" McIntyre, 758 F.3d at 150 (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." McIntyre, 758 F.3d at 151 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing Aubeuf v. Schweiker, 649 F.2d

107, 114 (2d Cir. 1981)).  If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Pardee, 631 F. Supp. 2d at 211 (citing Melligan v. Chater, No. 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." McIntyre, 758 F.3d at 151 (citing 20 C.F.R. § 404.1520(a)(4)(v)).  "'Courts have generally held that what constitutes a 'significant number' is fairly minimal.'"  Rosa v. Colvin, No. 12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2015) (quoting Fox v. Comm'r of Soc. Sec., No. 02-CV-1160 (FJS/RFT), 2009 WL 367628, at *3 (N.D.N.Y. Feb. 13, 2009)).  "[O]ther courts have found that as little as 10,000 jobs can constitute a significant number for the purpose of a Step Five finding." Waldvogel v. Comm'r of Soc. Sec., No. 16-CV-0868, 2017 WL 3995590, at *13 (N.D.N.Y. Sept. 11, 2017) (citing Hamilton v. Comm'r of Soc. Sec., 105 F. Supp. 3d 223, 229-31 (N.D.N.Y. 2015)).

Here, the ALJ found that Plaintiff can perform other jobs existing in significant numbers in the national economy including cashier (with 250,233 positions in the national economy, reduced from 706,700 by approximately one-third to accommodate the sit/stand option in the RFC), photocopy machine operator (with 18,145 positions in the national economy), and toll collector (with 31,696 positions in the national economy).  (T. 26-27, 65-66.)  As discussed above in Sections III.C. and III.E. of this Decision and Order, the ALJ's analysis of Plaintiff's

limitations and the opinion evidence, as well as the resulting RFC and credibility determinations, are supported by substantial evidence. Because the ALJ used this RFC to form the hypothetical question to the VE, any objection to the validity of the VE's testimony based on an incomplete hypothetical question is rejected.

Plaintiff's arguments about the specific requirements or availability of the positions identified by the VE are also not persuasive. As argued by Defendant, photocopy machine operator is an unskilled position with a specific vocational preparation ("SVP") of 2 and therefore Plaintiff's lack of experience with the photocopy job would not preclude him from performing it. (Dkt. No. 19, at 16-17 [Def.'s Mem. of Law].) See also Schwartz v. Apfel, 62 F. Supp. 2d 1002, 1006 (E.D.N.Y. 1999) ("[A]cquired skills do not transfer to unskilled work, which by definition, requires no skills.") (internal citations omitted).

Additionally, as Defendant points out, the relevant inquiry is whether work exists in the national economy that Plaintiff could perform. See Schwartz, 62 F. Supp. 2d at 1006. The ALJ need only show that jobs are generally available to a claimant, not that they are available in the specific area in which he lives. See Gill v. Astrue, No. 10-CV-0985, 2011 WL 4352410, at *14 (N.D.N.Y. Sept. 15, 2011), Report and Recommendation adopted by 2011 WL 4352719 (Sept. 15, 2011) ("A plaintiff will be found not disabled if the ALJ determines the plaintiff can perform work in the national economy regardless of whether work exists in the immediate area in which plaintiff lives, a specific job vacancy exists for plaintiff, or plaintiff would be hired if she applied.") (emphasis added) (citing 20 C.F.R. §§ 404.1566(a)(1)-(3)). The Step Five finding is therefore supported by substantial evidence. Remand is not required

on this basis.

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff Terrence N.'s motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:     September 7, 2018
           Albany, New York

Christian F. Hummel
U.S. Magistrate Judge